Good morning, Counsel. Good morning, Your Honors, and may it please the Court. Todd Borden from the Federal Defender's Office, appearing on behalf of the appellant, Raya Man. I'm going to try to save two minutes for rebuttal, and Judge Rawlinson, I will make sure to keep an eye on the clock. Thank you. All right. So there's two issues in this case, and I'd like to discuss the Apprendi issue first and then get to whether 245 is a violent felony under the ACCA. The government now agrees that the indictment's failure to charge and Mr. Mann's failure to admit that he had three prior convictions for felonies committed on separate occasions violated Apprendi. And so really the only disputed issue between the parties is whether or not the government has established that this error was harmless beyond a reasonable doubt. And I'd like to emphasize that this is the constitutional harmless error standard, so it is a more elevated standard. And under this circuit's precedent, to establish harmlessness beyond a reasonable doubt for an Apprendi error, the government needs to show both overwhelming and uncontroverted evidence. What relief do you seek? Remand? Correct, Your Honor. For a trial on this issue? No, Your Honor. We seek remand for resentencing without the obvious answer. Well, that's why I'm asking. Why, if you're correct, why shouldn't we just remand so that there can be a trial? I'm not sure why it should be a jury trial, but the government seems to think it should on this issue. The reason, Your Honor, is that the indictment in this case charged Mr. Mann only with sort of the plain vanilla felon in possession. It did not, you know, allege the facts that we're saying need to be charged under Apprendi. And the other reason is that Mr. Mann has already entered an open, unconditional guilty plea to being a felon in possession of a firearm and hasn't admitted those facts. And this Court has, you know, I think it would raise double jeopardy concerns for one thing, to send the case back. Not if you ask for it. You're asking us to reverse the judgment, so the question is then what do we do with the judgment? There's no double jeopardy if the judgment is reversed. So I, well, Your Honor, I think that the, you know, the defendant has, and I didn't cite this in my brief, and I could send a 28-J letter on this. I'm recalling a decision called Thomas, which that was sort of in the Buckland era when the question about drug quantities and whether or not those had to be charged in indictments was an Apprendi fact. And my recollection is that this Court took the approach that, you know, once the defendant enters that unconditional guilty plea, you sort of don't get to reopen that. You know, the government had its chance if it wanted to indict based off of these, you know, prior convictions. But this is a different issue. You're saying that a jury should have made the determination as opposed to the judge. So if what you want is the jury to make the determination, isn't that what you get? Well, I guess, Your Honor, I would say that there's two aspects to the Apprendi right. It's not just the pettit jury. There's also a grand jury right to have that matter indicted, and that never happened in this case. So I don't think that, you know, the only way that this could, you know, really go back and have the potential for the 15-year sentence imposed, I think, would be if there were to be a superseding indictment. And I don't, you know, I think double jeopardy principles would tend to preclude the ability to, you know, once the defendant's pleaded guilty. I'm just not sure how the case would work. Did you raise that objection below? I read the objection, which was you. I don't mean you personally, but your side. I read the objection, which was, I think, very artfully worded, which was I don't think the PSR is enough to establish this. But did anybody say below the indictment doesn't allege this? I'm trying to recall, Your Honor. It said excerpts of Record 61. I can definitely recall. Yeah, no, I've read them. I can't find any place where that occurs. So it's only at 61. So whatever was said there would have been what was said. I mean, I think the argument was that we were contending that Apprendi applied and that I can't recall if we specifically said that. It was a failure also of the indictment. That's certainly our position on appeal. I'm trying to figure out how you got to the point of sentencing, so help me out with the procedure below. I mean, there was a sentencing hearing at which the judge said, I'm going to impose an armed career criminal act. Nobody said, oh, my God, I've never heard of that before. Where did that come from? You eventually got there with everybody expecting that this was on the table. How did you know it was on the table? Well, I think it was because of that objection, again, that was raised in the sentencing memorandum, although maybe I'm not understanding the point. Well, the sentencing memorandum, PSR did suggest an armed career criminal act sentence, did it not? Oh, that's right, yes, Your Honor. And so you were on notice when you got to PSR that there was going to be one. And I'm trying to figure out whether anybody then said to the judge, wait a minute, that's not on the table because it wasn't in the indictment. So, you know, Your Honor, I should have read more carefully. You know, I would point the court to Excerpts of Record 61. I guess the other principle I might have— Let me ask you this. Sure, Your Honor. If no one raised that before the judge and the judge went ahead and made the finding, are we on plain error review? No, Your Honor. For starters, the government has not invoked plain error review, and plain error review can't be waived by the government. But more importantly, we did pretty clearly cite Apprendi and say that, you know, the principles that sort of Sixth Amendment due process requirements require the separate occasion facts to be, you know, to go through the Apprendi process was raised. So I— But the problem is, as a district court judge, if no one raises the specific issue and then you go ahead and make the finding, it's a little bit of blindsiding the district court judge to later on say, hey, the district court judge should have done this differently when no one pointed out to the district court judge that it should have been done differently because it could have been easily remedied at that time. Well, I'm not so sure because once the, you know, the defendant— I mean, I know, for example, over the summer the Department of Justice position changed on this. I mean, my friend— I'm talking about at the time of the sentencing. If someone had raised the point about whether or not the district court judge had the authority to impose the enhancement, the district court judge could have made a decision on whether or not he had the authority and then proceeded from that. Well, you know, I'm not sure because I think if—well, you know, I understand your point. I mean, I would say sort of as a practical matter, I think if you read the sentencing transcript here, it's fairly clear Judge Breyer will—would not be terribly disappointed by— Well, none of us would be terribly disappointed if the Armed Career Criminal Act went away, but that's not—that's not our job. Sure, sure. I'm looking at 72 of the transcript of the ER, and Mr. Kalar is representing your client below, and he says it's the government's position that my client is an Armed Career Criminal Act, ACCA, and he says this is an open plea. There's no notice requirement for the ACCA. And then he goes on to argue why this client doesn't qualify, but he doesn't say ever we didn't get notice. I think that's—excuse me, Your Honor. So certainly at that point in the transcript, that's true. I would just point out that's not actually the—that was not the ultimate plea colloquy. Kind of at that point, Judge Breyer was actually concerned about the ACCA question and sort of paused the change of plea hearing, asked probation to prepare a pre-plea PSR. Yes, and that's what I was getting to. Yes, yes. So pre-plea, your client knew that the ACCA was on the table. So your—the indictment argument has to be it doesn't matter. It's structural error if it wasn't in the indictment. I don't think that's right, Your Honor. I don't think it needs to—I mean, and we acknowledge that this is subject to harmless error review, of course, but— Well, but that's my point. Before he pleaded, he knew that the government was seeking the ACCA. Judge Breyer said let's get a pre-plea PSR so he knows exactly what he's facing. So if the indictment issue is not a structural error, then it seems to me your client had plenty of notice that it was on the table. Put aside whether it was satisfied with what they presented. That's a separate issue. Well, I guess I would say, you know, it's the specific notice of the facts about whether it was committed on separate occasions, because that's the notice. I mean, he broadly was on notice. No, no. I'm assuming for a moment, as the government concedes it, there's a pre-plea error. Sure. I'm just trying to figure out why, how your client was prejudiced in any way by there not being an indictment at alleged ACCA, because before he pleaded, he was told that he got a pre-sentence report that said it was on the table. You discussed that with Judge Breyer. So he knew full well before he pleaded that he faced this jeopardy. I mean, he was certainly aware that there was a possibility. I certainly can't deny that. That's apparent from the record. But he certainly didn't have the notice, you know, that would have come from an indictment that actually charged the separate occasion facts. And I think — But why does that matter? If he had the notice, does it matter that it didn't — that it came from proceedings post-indictment as opposed to in the indictment? Well, you know, I guess — I mean, I guess my position would be that the grand jury right has to — it has to — I mean, it has to mean something. And I think it — It means something, but the issue becomes whether or not this was harmless error at that point. Does the right to a grand jury indictment render this error harmful? And do you have a case that supports your argument that failure to provide notice in the grand jury indictment renders any other notice ineffective? I'm not sure. I mean, I'm thinking potentially of the DeVoe case, which I wasn't even citing in our briefs, which I could cite in our 28J letter. But, you know, I do want to just, in the little bit of time left, point out that, you know, the PSR here, which is the sole thing being relied on for harmlessness, really doesn't actually even discuss the time of the offense of conviction, which is what we need under Wooden. So I think that even if we get to the — No, it doesn't establish. They concede it's error. They concede it's not enough. That's not the question. The PSR surely tells you the three crimes on which it is based. They are pretty far apart. And if a judge had looked at the — I think a judge may be even only looking at the attorneys could say, one is eight years after the other, they couldn't have been part of a continuous course of conduct, another one is two or three years before the other, that's a separate issue. But you were on notice of the three crimes that they thought qualified your client for the mandatory minimum, weren't you? Judge Rawlinson, may I? Oh, please. So, you know, as to the Shepard document issue, I mean, I think it is important to note there are no Shepard documents. No, no. You win. Okay. Okay. Sorry. I'm trying to answer the question I want you to ask. They say you win. They say it's harmless error, but that's a separate issue. You win. They violated Apprendi. They didn't have enough. But you surely got notice of the three predicate felonies that they thought were there. Well, that's true, but there was never any — you know, I guess I would point to the Guerrero-Hasso opinion. I think that's the strongest on Apprendi harmless error here. And, you know, their judge presumably emphasized — We're missing each other. Oh, okay. Let's assume the error isn't harmless and we're sending it back. Okay. Now the question is, do we send it back and say to the judge, throw out the ACCA charges, or do we say conduct a trial? And what I'm saying — what I'm asking you is, you had notice of the three predicate offenses because they're in the PSR and the government told you what they were. You knew before the plea what the three predicate offenses were. It may be when it goes back, they'll be unable to show that these weren't a continuous course of conduct, but I kind of doubt it. And so I'm trying to figure out why it was that you lacked any notice that you would have gotten had the indictment said, and by the way, you're an armed career criminal, and here's the — that's all it would have said. You're an armed career criminal based on three prior offenses, and that's what they would have been. So, yeah, I mean, I don't think I can very persuasively push back on the notice point. I think the bigger issue about why that approach you're suggesting, Judge Hurwitz, would be problematic, I think, is more double jeopardy concerns. And again, I didn't think I cited it in my brief. I will obviously be filing a 28J letter, but I do think this Court has some precedent saying that once you enter an unconditional guilty plea to an offense where the particular — Again, that's why I pointed you back to the transcript. Judge Breyer says, this is an open plea, and on the plea, you're going to face Armed Career Criminal Act jeopardy. So it wasn't as if this was a proceeding in which he said, I'm only pleading to the crime, and, you know, and that ends it. Everybody understood that there was going to be an ACCA here. I've taken you over, and I apologize for that. Well, I appreciate the extra time. And so, I mean, yes, we did know it was on the table, but I guess — I guess my position is that the defendant has the right to kind of race to the courthouse to plead guilty to what was charged. And, you know, this summer, that's exactly what we saw, I can attest, because DOJ changed its position and now agrees this is an Apprendi problem. And throughout the country, you know, defendants were, you know, to avoid getting sentenced under ACCA, they were pleading to the plain vanilla 922G to get it capped at 10 years. I mean, that's what would have happened, honestly, for Mr. Mann. But that's not this case, because he noticed that the ACCA was on the line in terms of his particular plea, right? Because he made an open plea, so that didn't take it off the table. Well, I mean, I guess I'm just — and I may or may not be persuading the court, but I guess my position is that, you know, once, you know, the defendant has already pleaded guilty and his plea did not contain those facts that were necessary under Apprendi, you know, Apprendi says you have to either, you know, have a jury find it or a defendant plead. Once the defendant's pleaded, you know, I think double jeopardy principles prevent a subsequent trial. But you're, in essence, arguing structural error at that point. And we're here for a harmless error review. So your argument is really a structural error, which doesn't apply here. Well, I don't think it's a structural error. And I think the reason — I mean, the reason it's not structural — well, I mean, because I think the reason for this is because Judge Hurwitz has kind of already suggested — I mean, if Your Honor agrees with Judge Hurwitz, that you're sort of agreeing that the error wasn't necessarily harmless based off the documents presented. The question is sort of the remedy, I guess. Well, I haven't made up my mind on whether it was harmless or not. Okay. Sure, sure, sure. We're just asking you questions. Yeah. No, I'm happy to answer them. All right.   Thank you, counsel. We'll give you a minute for rebuttal. Okay, I appreciate that. I appreciate that, Your Honor. Okay, we'll hear from the government. Good morning, Your Honors, and may it please the Court, Molly Smolin for the United States. This Court should affirm the District Court's imposition of man's sentence under the Armed Career Criminal Act for two reasons. First, Borden simply adopted this Court's long-held standard that a mens rea of simple recklessness is not enough for an act of predicate crime, and therefore it's not clearly irreconcilable with this Court's precedent. And second, any error that the District Court made in determining that man's violent felonies were committed on different occasions was harmless beyond a reasonable doubt, given that his three prior convictions took place in three different decades, and the arrests for his two assault with a deadly weapon convictions were nearly 14 years apart. How do we know that? I mean, it's in the PSR to be sure, but the PS, you know, shouldn't you produce the documents? Well, I take Your Honor's question to be whether the PSR is sufficient. Yeah. Well, I believe in this case that it is, Your Honor. I would point the Court to Zepeda-Martinez, where this Court found an apprendi error to be harmless. But in that case, the defendant admitted, the defendant said the PSR is accurate. Not precisely, Your Honor. Well, it didn't object to it anyway. That's right, Your Honor, and that's exactly what we have here. Well, it's acute objection, acute is the wrong word, very well-worded objection. But there is an objection on sort of on this point. It says, I don't think you've shown that these all occurred on separate occasions and we're reserving all our rights and et cetera, et cetera. Why isn't that enough to contest the factual allegations in the PSR and therefore require you to come forward with evidence? Yes, Your Honor. Under Nieder, the question for harmless error review is whether the record contains evidence that could rationally lead to a contrary finding. It's not enough for the defendant to say, as he did in this case, that I think that my Sixth Amendment rights are implicated here. Well, does the record have any evidence? That's my problem. The PSR is not evidence unless admitted, because what apprendi says, you either have to admit or have a trial. I don't know what the effect of the – I'm asking you what the effect of their objection is. If they didn't admit to the PSR, then you didn't present any evidence at all, because the PSR itself is not evidence of prior crimes. Your Honor, I actually think that that conflates whether there was an apprendi error and whether the error was harmless. We concede that the PSR was not a sufficient basis on which to make this finding after Wooden, but the defendant never contested that the facts contained within that PSR, which this Court stated in Zepeda-Martinez may be accepted because they are undisputed as a finding of fact by the sentencing court. So in this case for the harmless error analysis, those facts contained in the PSR which are completely uncontested are a sufficient basis for this Court to find harmlessness. Well, there's a difference between whether or not the facts are uncontested and whether or not the defendant objected to them as being sufficient evidence. So I'm not sure on whether or not you agree or disagree with the premise that the defendant objected to the PSR as being the evidence in this case. I don't agree with that, Your Honor. I believe that the defendant objected to the procedural mechanism by which he could have been found to have committed his crimes on different occasions. But not to the fact of the prior convictions. That's correct, Your Honor. And I would point the Court to excerpts of Record 76, which is later in that same colloquy that the Court was discussing earlier, where defense counsel stated that the only issue will be whether those triggering convictions constitute crimes of violence that trigger the ACCA. And, in fact, That's the Borden issue, I take it? Yes. That's correct, Your Honor. So consistently throughout the litigation below, there was no objection to the factual finding that these crimes were on different occasions, simply to the procedural mechanism by which that finding could be made. Could we take judicial notice of these three convictions? I assume they are reflected in documents on file with the California Superior Court. Is this something of which we could take judicial notice? I'm not certain, Your Honor, but I don't think that that's necessary here. Because in conducting the harmless error review, there must be evidence in the record that could rationally lead to a finding contrary from that the district court made here. And there is no such evidence. In fact, the defendant had an opportunity to object. Well, that can't be. What if you presented no evidence? We wouldn't be looking for evidence in the record contrary to the district court's ruling. We'd say you presented no evidence and, therefore, you lose. So the question is, in my mind, is not whether or not we can find something in the record that might support your position. The question is whether the error is harmless beyond a reasonable doubt. No? Yes, Your Honor. But in United States v. Hunt, this Court noted that in assessing harmlessness, we review the entire record to determine what evidence the parties would have. Was that Chapman harmlessness? I'm sorry, Your Honor? Was that a Chapman harmlessness case? I'm not certain. Because there's two different, as you know, two different versions. There's constitutional harmlessness and there's plain vanilla harmlessness. And I always thought the test for constitutional harmlessness was it was your burden to show beyond a reasonable doubt that the error was harmless. Yes, Your Honor. That I believe is correct. And that's why I think a test that says we look some – if there's anything in the record that might support your position can't be the test we apply for Chapman harmlessness, is it? Well, under Nieder, that is the standard, whether the record contains evidence that could rationally support a contrary finding. And here the record contains no such evidence. We have a conviction for which the defendant was arrested on October 2, 1998. That's a San Francisco conviction. The only other conviction that Mann argues could even possibly, although I would consider this a possible or imaginary doubt as opposed to a reasonable doubt, is the second assault with a deadly weapon conviction for which he was arrested on February 9, 2012, nearly 14 years later. Under those uncontroverted, uncontested facts that were before the district court, there's simply no reasonable possibility that those two convictions, the arrests for which were separated by almost 14 years, could have taken place on the same occasion. The Wooden court didn't think that this was going to be a difficult determination. I think Wooden was dealing with a very specific situation, and it said sometimes convictions will be so far apart that they won't qualify. Would you help us with the issue that we talked to your friend about a lot, about notice? The indictment doesn't allege an ACCA aggravator, if you will. When does the other side first learn you're seeking this, and how do they learn it? Help me understand the record. Your Honor, I couldn't point to a specific date, but as of that colloquy, which was at excerpts of records 72 through 76 and the surrounding pages, it was clear at that point that the defendant was on notice, that the ACCA was likely to apply in this case, and that in defense counsel words. But you don't know how he received that notice. I do not, but it's clear that he had that notice long before he pleaded guilty, long before he was sentenced, before he received the PSR, and so there's simply no prejudice that results from the failure to plead the ACCA enhancement in the indictment in this case. What has the government been doing in similar cases when they get sent back? Tell me what the procedure has been. Are you filing a superseding indictment alleging the ACCA stuff? As the court knows, this is a fairly recent issue, and I'm actually not aware of any cases that have been sent back on the Woodin issue, so I couldn't speak to that. Counsel, your reliance on Nieder, does it make a difference that Nieder involved a jury instruction issue following a trial where there was evidence admitted that you could look to in the record as opposed to this case where we don't have record documents? Does that make a difference to your argument? I don't believe that it does, Your Honor, because in this case, this was not something that anyone below thought was actually a factual issue. The question that the parties in the court were wrestling with in this case, through the entirety of the litigation, was the Borden issue. But you said that under Nieder you could look to the record, but there is no record on this point because the PSR is the only document there and it was not admitted. So how can we look to a record if there was no record made? There is a record made, Your Honor, and in this case it is the PSR and the fact that in all of the proceedings below, there was no objection made. The only place those facts come from is the PSR, correct? That's correct. Nobody stood up in court and said, and by the way, I've got something here, a rap sheet, something else that shows it. The facts come only from the PSR. That's correct, Your Honor. That's different from Nieder, where there was an entire trial and there was record evidence admitted. So I'm not sure that Nieder is your strongest case to support the argument that you can look at the court records, because there is no record in this case other than the PSR. Yes, Your Honor, but I would point the court back again to Zepeda-Martinez, where this court found that Apprendi error was harmless, where they were looking to a similar issue, the date of a prior removal, and the court looked to a factual paragraph in the PSR as evidence of the date of the defendant's prior removal. So I think under that case and also Salazar's case. But again, an unobjected to PSR. An unobjected to PSR. And I see my time is up, Your Honor, but if I may. Would you agree that the PSR in this case was objected to? I would not. In fact, if you look at the PSR at page 16, it states that all objections have been resolved. There was no objection made to the factual findings in the PSR, as it was before the court. There was no objection at sentencing. That's excerpts of Record 20, where the district court asks whether there's any further pre-sentence report or information that's necessary. The district court stated in its order on the sentencing issue that the dispute turned on whether the convictions constitute violent felonies. Nowhere at sentencing did the defendant stand up and say, no, no, no, there's actually another issue that this court needs to resolve that's not resolved by the evidence before the court, which is the PSR. I just have a quick question. Do you have any concerns that on his third conviction, there is no documentation to support the finding of that offense? They were still waiting for a police report. There's absolutely nothing there other than the report that he was arrested in San Francisco, I think it was, by the San Francisco Police Department. Does that concern you at all for factual? Not in this case, Your Honor, because under Wooden, which stated that a single factor, especially of time or place, can decisively differentiate occasions. This is 14 years. But where's the documentation to support that there was any period of time because there's no document? There's just a statement. In the PSR, that's correct, Your Honor, but under the statute of limitations in California, that prosecution would have needed to commence within three years of the conduct. This is a 14-year span. There's simply no reasonable possibility that that second conviction for 245A1 could have been based on conduct that took place in 1998. Counsel, if we are unpersuaded by your argument and we remand this case, what do you think the appropriate remedy would be? Your Honor, I believe that the government is precluded from trying to prove up the ACCA enhancement if this court were to remand. In that case, if this court were to find that this error was not harmless beyond a reasonable doubt, I believe the defendant would be resentenced without the ACCA enhancement. Thank you for your candor. If there are no further questions, I'm well past my time. We would ask that this court affirm the district court. Thank you, counsel. One minute for rebuttal. Three quick points, Your Honor. Judge Hurwitz, to your point, I just reviewed the excerpts of Record 61, and we did expressly argue that it would be a Sixth Amendment violation because the indictment failed to charge. So we did preserve that. And it's in your briefing below, too. Yes. Sorry. Yeah, that's where it was in the briefing at 61, Your Honor. So that is preserved. My opposing counsel mentions Zapata-Martinez a lot. An important factual distinction there, at the sentencing hearing in that case, the government introduced the original warrant of removal. That's vastly different from this case. There was actual evidence there. And I think if the court looks to a lot of the other harmlessness cases, even some of the ones where they said it was not harmless, Guerrero, Hasso, and Hunt, there was additional actual evidence beyond the PSR that was admitted. I don't think there's any where it's the PSR standing alone that is the sole basis, which I think is a real problem for the government. And finally, I would just point out that there's no requirement that the defendant affirmatively argue against harmlessness in the district court. The Guerrero-Hasso opinion really makes that point quite clear. It's the government's burden to prove up the enhancement, and they just didn't in this instance. All right, counsel. Thank you. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the court.
judges: RAWLINSON, HURWITZ, Cardone